Jackie HAYMONS, Karen Holcroft, Frank King, Peter Morden, Rand Robinette, and Yolanda Alston, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Robert WILLIAMS, as Secretary of the Department of Health and Rehabilitative Services, State of Florida, Defendant.

No. 91–503–Civ–J–10.

United States District Court,
M.D. Florida,
Jacksonville Division.

April 30, 1992.

Patricia A. Clare, Robert Bencivenga, James A. Heard, Jacksonville Area Legal Aid, Inc., Jacksonville, for plaintiffs.

Carl Bruce Morstadt, Gordon Scott, Dept. of Health & Rehabilitative Services, Tallahassee, Fla., for defendant.

OPINION AND ORDER CERTIFYING LIMITED CLASS AND GRANTING SUMMARY FINAL JUDGMENT IN FAVOR OF PLAINTIFFS

SCHLESINGER, District Judge.

This cause is before the Court on the following motions:

(1) Plaintiffs' Amended Motion for Class Certification (Doc. 43), filed on December 20, 1991, to which defendant filed a response (Doc. 48) on January 13, 1992;

(2) Plaintiffs' Amended Motion for Order and Preliminary Injunction (Doc. 45), filed on December 20, 1991, to which defendant filed a response (Doc. 58) on January 30, 1992;

(3) Plaintiffs' Motion for Summary Judgment (Doc. 51), filed on January 21, 1992, to which defendant filed a response (Doc. 58) on January 30, 1992;

(4) Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 60), filed on February 13, 1992, to which plaintiffs filed a response (Doc. 65) on February 26, 1992; and

(5) Defendant's Motion for Summary Judgment (Doc. 62), filed on February 13, 1992, to which plaintiffs filed a response (Doc. 66) on February 26, 1992.

The Court conducted a hearing on the motion for class certification and on the motion for preliminary injunction on January 30, 1992. A hearing on both motions for summary judgment was conducted on February 28, 1992.

Upon consideration of the memoranda and argument of the parties, other relevant documents in the record, and relevant law, the Court is of the opinion that a limited class should be certified and that summary judgment should be granted in plaintiffs' favor. No disputed issues of material fact exist and plaintiffs are entitled to judgment as a matter of law, in accordance with Rule 56 of the Federal Rules of Civil Procedure. Accordingly, plaintiffs' motion for class certification and motion for summary judgment will be granted and defendant's motion to dismiss and motion for summary judgment will be denied. In light of this Opinion and Order, plaintiffs' motion for preliminary injunction is rendered moot.

Procedural Background

Plaintiffs filed this action on June 28, 1991. The named plaintiffs presently before the Court, however, were not the named plaintiffs when the original complaint was filed. The original named plaintiffs filed a motion for temporary restraining order and a motion for preliminary injunction with their complaint. The Court denied the motion for temporary restraining order on July 1, 1991, and held a hearing on the motion for preliminary injunction on July 17, 1991. On July 19, 1991, the Court entered an order which stated that it would defer ruling on the motion for preliminary injunction and require the parties to participate in a mediation conference on July 25, 1991. This attempt at mediation was unsuccessful and no settlement of any part of the dispute came out of this conference.

On July 29, 1991, the Court entered an order granting the motion for preliminary

injunction as to the original named plaintiffs only. As a result of this order, defendant filed a Motion to Dismiss on August 30, 1991. Defendant asserted that the case should be dismissed because the named plaintiffs had received all of the relief they had sought in the complaint and thus they no longer had viable individual claims and could no longer be class representatives. Plaintiffs responded that the named plaintiffs' claims came under the "capable of repetition yet evading review" exception to the mootness doctrine. Before an order on this motion was entered, however, the Court entered an order on September 24, 1991, allowing six intervening plaintiffs to join the action. The intervening plaintiffs asserted claims identical to the claims of the original plaintiffs.

On December 3, 1991, the Court entered an order granting the motion to dismiss the original named plaintiffs, but stating that the action could continue in the name of the intervening plaintiffs. In light of the dismissal of the original plaintiffs, and to ensure that the record was clear, the Court required plaintiffs to file an amended complaint, an amended motion for preliminary injunction and amended motion for class certification, which would reassert the allegations as they related to the new named (intervening) plaintiffs. Plaintiffs filed their amended pleadings on December 20, 1991, replacing the names of the original plaintiffs with those of the new plaintiffs in the captions of their pleadings, as directed by the Court.

### Factual Background

Defendant is Secretary of the Florida Department of Health and Rehabilitative Services ("HRS"), the state agency responsible for administration of funds provided to the state under the Medicaid Act, 79 Stat. 343, as amended, 42 U.S.C. § 1396 *et seq.* (1988). "Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals.... Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Medicaid Act ... and regulations promulgated" thereunder. *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). Medical care paid for by Medicaid may include home or community-based services which, if not provided, would require care in a hospital, skilled nursing facility or intermediate care facility. 42 U.S.C. § 1396n(c)(1); 42 C.F.R. § 435.217 (1990). Florida has provided for such services, calling them "Home Health Care Services." The specifics of the state's home health care program are set forth in Rule 10C–7.044 of the Florida Administrative Code.

Plaintiffs are Medicaid-eligible mentally ill or mentally retarded adults living in facilities which are intended to be an alternative to institutionalization. These facilities are called "Adult Congregate Living Facilities" ("ACLF's"). At the ACLF's, plaintiffs were receiving home health care services from two private providers of the services. Pursuant to a home health treatment plan of care, these services were prescribed as medically necessary by a physician licensed to practice in the state. The services included a nurse to distribute medication and provide other medical care and included other services related to personal hygiene. The providers were reimbursed for the services under the Medicaid program until May 20, 1991.

On May 20, 1991, HRS notified the two providers, Underhill Personnel Services ("Underhill") and Conval–Care, Inc. ("Conval–Care"),[1] that they were being terminated "for cause from participation in the Florida Medicaid program for violation of federal and state laws and regulations respecting the Medicaid program...." *See* Exhibits 2a and 2b attached to plaintiffs'

---

**1.** In some of the papers filed in this action and at the hearing on the motions for summary judgment, the parties referred to the termination of three providers, rather than two. However, specific references in the amended complaint are to Underhill and Conval–Care only, with no mention of a third provider. The Court has no basis upon which to consider the termination of a third provider, if such termination in fact did occur, and therefore the Court will confine its discussion to the termination of Underhill and Conval–Care.

amended complaint, at page one of each. HRS terminated the providers because they billed "for services that are not covered by Medicaid." *See Id.*

The notification letter sent to Underhill stated that Underhill was being terminated because an HRS analysis of claims submitted on behalf of a random sample of 24 recipients of home health care services from Underhill "revealed that the services do not meet the criteria for home health nursing and aide services as set forth" in the Medicaid Home Health Provider Handbook and relevant sections of the Florida Administrative Code ("F.A.C."). Exhibit 2a, at 1–2. The specific deficiencies of Underhill were described as follows:

Section 11.3, Medicaid Home Health Provider Handbook states that home care is either an extension of medical care into the home during a convalescent period or an alternative to permanent institutionalization. The recipients in this review do not fall into either required category.

Section 11.4, Medicaid Home Health Provider Handbook and Rule 10C–7.044(1)(e), (i), (5)(a)3 and (14), F.A.C. state that home health services must be medically necessary. This office has determined that the use of skilled nurses to administer medication to the recipients comprehended in the review is not medically necessary.

Section 11.7 of the Medicaid Home Health Provider Handbook and Rule Section 10C–7.044(7)(b), F.A.C. state that the following services are excluded from payment and shall not be reimbursed:

(b) Chore services (homemakers)

Our review of the home health aide records indicate that (1) the personal care activities are not medically necessary, and (2) many of the services provided are homemaker services, e.g. making beds, changing linens, etc.

Exhibit 2a, at 2.

In the same manner, the notification letter sent to Conval–Care stated that Conval–Care was being terminated because a review of its claims by the Medicaid Fraud Control Unit ("MCFU") "revealed that the services do not meet the criteria for home health services as set forth" in the Medicaid Home Health Provider Handbook and relevant sections of the Florida Administrative Code. Exhibit 2b, at 1–2. The specific deficiencies of Conval–Care were described as follows:

Section 11.3, Medicaid Home Health provider handbook states: "Home care is either an extension of medical care into the home during a convalescent period or an alternative to permanent institutionalization." The recipients in this review do not fall into either required category.

Section 11.4, Medicaid Home Health provider handbook and Rule Section 10C–7.044(1)(e) and (i), (5)(a)3 and (14), F.A.C. state that home health services must be medically necessary. The MCFU review revealed that you were paid $349,500.00 for services that were not medically necessary.

You were paid $241,582.00 for services that, in addition to not meeting the medical necessity criteria, were rendered while no valid signed physician's authorization was in effect. This is in violation of Medicaid policy as set forth in provider handbook and Rule Subsections 10C–7.044(1)(e) and (i), (5)(a)(1) and (2), F.A.C. Total overpayment for these violations of Medicaid policy is $591,082.00.

Exhibit 2b, at 2.

As a result of the termination of these two providers, plaintiffs stopped receiving home health care benefits as of the date of the termination of the providers, May 20, 1991. Defendant concedes that plaintiffs received neither formal notice nor the opportunity for a hearing before (or after) the termination.

At the hearing on the first motion for preliminary injunction, defendant stated that the two disqualified providers have invoked administrative review of their termination. The Court at this time has no information concerning whether this review has been completed and, if so, who prevailed.

### Summary of the Parties' Contentions on the Merits

Plaintiffs seek a declaration that the failure of HRS to provide plaintiffs with notice and the opportunity for a hearing before terminating their home health care benefits violated certain provisions of the Medicaid Act, and regulations promulgated thereunder, and also violated plaintiffs' rights of procedural due process under the Fourteenth Amendment, as enunciated in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiffs also seek an injunction directing defendant to reinstate the benefits and provide plaintiffs with notice and the opportunity for a hearing before any termination.

Defendant's primary argument in response is that HRS was not required under the applicable statutes, regulations and constitutional provisions to provide plaintiffs with notice and the opportunity for a hearing before terminating the two home health care providers because that action did not terminate each plaintiff's individual benefits. Rather, defendant argues, HRS only disqualified those two providers from receiving reimbursement from Medicaid for providing the services to plaintiffs. Defendant asserts that while plaintiffs may have lost home health care services as a result of this disqualification, plaintiffs have not been found to be individually ineligible *per se* to receive these benefits. In other words, HRS has not made determinations that particular plaintiffs are ineligible for these benefits.

In reply, plaintiffs assert that the providers were disqualified because HRS determined that the recipients were not eligible for the services they were receiving. In its notification letters to the providers, HRS stated that it had determined that the recipients did not fit into either category of those eligible for home health care benefits, that is, they were not receiving the benefits as "an extension of medical care into the home during a convalescent period or [as] an alternative to permanent institutionalization." Also, HRS stated that it had determined that the benefits were not medically necessary for these recipients. Plaintiffs contend that they cannot go to another provider for the services because if a determination has been made that they are not eligible, no provider may offer the services and be reimbursed by Medicaid. Thus, plaintiffs conclude, their benefits have been "terminated" under the applicable legal provisions.

### Motion to Dismiss

In his motion to dismiss, defendant argues that this Court lacks jurisdiction to adjudicate plaintiffs' claims or, in the alternative, that this Court should abstain from such adjudication under the *Burford* abstention doctrine. These arguments are without merit.

■ Defendant first contends that this Court does not have jurisdiction to adjudicate plaintiffs' claim that defendant violated their right of notice and hearing conferred by the Medicaid Act and regulations promulgated thereunder. In their amended complaint, plaintiffs assert that this action arises under 42 U.S.C. § 1983 (1988).[2] Defendant cannot and does not dispute that this Court has jurisdiction over claims brought pursuant to Section 1983. Rather, defendant's argument must be that this action, though ostensibly brought under Section 1983, is not, in fact, actionable under that statute and, therefore, jurisdiction does not lie with this Court.

The holding of *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), is contrary to defendant's position. In language applicable to the present action, the Supreme Court found that a provision of the Medicaid Act codified at 42 U.S.C. § 1396a(a)(13)(A) cre-

---

**2.** 42 U.S.C. § 1983 provides, in relevant part, as follows:

> **§ 1983. Civil action for deprivation of rights**
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ated a right under Section 1983 that could be enforced in a civil action brought by private health care providers. The right asserted by plaintiffs in the present case—notice and the opportunity for a hearing before the termination of Medicaid benefits—is more clearly a right under Section 1983 than the right asserted by the health care providers in *Wilder.*

The provisions of the Medicaid Act and its implementing regulations which provide for notice and hearing codify and define the process that is due Medicaid recipients pursuant to the Supreme Court's holding in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See* 42 C.F.R. § 431.205(d) (1990) (state's hearing procedures "must meet the due process standards set forth in *Goldberg v. Kelly* ..."). Plaintiffs claim that defendant has violated their fundamental procedural due process right to advance notice and the opportunity for a hearing before their government-conferred medical benefits are taken away. No serious argument can be made that such a claim grounded in the Due Process Clause is actionable under Section 1983 and *Wilder* demonstrates that such a claim grounded in the Medicaid Act also is actionable under Section 1983. Accordingly, this Court has jurisdiction to adjudicate these claims.

■ Assuming the correctness of his contention that the Court lacks jurisdiction to adjudicate the statutory due process claim, defendant next contends that the Court lacks jurisdiction to adjudicate plaintiffs' constitutional due process claim as well. According to defendant, plaintiffs' claim that their procedural due process rights under the Fourteenth Amendment were violated are "patently without merit" in light of *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), and therefore this Court is without jurisdiction to hear that claim. Apparently, defendant is arguing that plaintiffs' claims are "constitutionally insubstantial" and thus cannot present a controversy sufficient to confer jurisdiction. *See Hagans v. Lavine,* 415 U.S. 528,

534–44, 94 S.Ct. 1372, 1378–83, 39 L.Ed.2d 577 (1974).

The Court finds, however, that these claims are far from constitutionally insubstantial. To find that a claim is constitutionally insubstantial, a court must find that it is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court...." *Hagans,* 415 U.S. at 543, 94 S.Ct. at 1382 (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) (citations omitted)). *O'Bannon* does not clearly foreclose plaintiffs' claims. Indeed, the Court finds, *infra* pp. 1521–1522, that *O'Bannon* is factually distinguishable from the present case. While defendant may argue that *O'Bannon* demonstrates that plaintiffs do not have a right to notice and hearing, this argument goes to the merits of the controversy, not to whether this Court has jurisdiction to hear the controversy.

■ Finally, defendant argues that the Court should abstain from exercising jurisdiction over this action pursuant to *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Defendant asserts that "Plaintiffs' claim for services has the potential for disruption to state efforts to establish coherent policy with respect to a matter of substantial public concern, the provision of necessary medical services to the needy on a cost-effective basis. The pending state administrative proceedings on HRS' termination of the three [3] home health agency providers and the availability of state court remedies for the Plaintiffs also indicate abstention is appropriate."

The Court first notes that, as plaintiffs point out, the Eleventh Circuit has indicated that abstention is inappropriate in Section 1983 cases. *See Alacare, Inc.—North v. Baggiano,* 785 F.2d 963, 969 (11th Cir.1986) (citing *Forehand v. First Alabama Bank of Dothan,* 727 F.2d 1033,

---

**3.** *See* footnote 1, *supra.*

1036 (11th Cir.1984)). Second, the Court finds that defendant's assertions concerning disruption and the availability of state remedies do not have a basis in the facts of this case or applicable law. The relief requested by plaintiffs is notice and the opportunity for a hearing before their Medicaid benefits are terminated by the state. Plaintiffs do not ask this Court to determine the underlying issue of whether they are entitled to the terminated benefits. No disruption of state efforts to establish a coherent Medicaid policy will occur if the Court grants the relief sought by plaintiffs. While the state will incur some cost, this cost results from the state's duty under the Constitution and as a participant in the federal Medicaid program to provide procedural due process protections to its citizens who receive Medicaid benefits.[4]

Third, plaintiffs have no state remedies to which they can turn in lieu of receiving relief from this Court. Plaintiffs have demanded and the state has denied precisely the relief plaintiffs seek in this case—reinstatement of their benefits, notice of termination and the opportunity for a pretermination administrative hearing to challenge the termination. Moreover, the pendency of administrative proceedings in which the terminated home health care providers are seeking reinstatement does not provide a basis for abstention. If plaintiffs claims are valid, they have a statutory, regulatory and constitutional right to notice and hearing before the state terminates their Medicaid benefits. That right is not vindicated by providing a third party with such notice and hearing. Thus, the Court need not abstain from adjudicating plaintiffs' claims.

### Motion for Class Certification

In deciding whether this action should be certified as a class action, the Court first must determine whether the prerequisites delineated in Rule 23(a) of the Federal Rules of Civil Procedure have been met. These familiar prerequisites are "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If the Court finds that these prerequisites have been met, the Court next must determine whether the class action is maintainable under one of the three subsections of Rule 23(b).

Plaintiffs propose a class defined as follows:

> All current and future residents of ACLFs in Florida whose home health care services under Florida's Medicaid Program were terminated or will be terminated by HRS without advance notice and an opportunity for a pre-termination hearing.

Plaintiffs assert that they satisfy the Rule 23(a) prerequisites and that the class action is maintainable under Rule 23(b) because defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *See* Fed.R.Civ.P. 23(b)(2).

In his response to the motion for class certification, defendant states that he "does not oppose the certification of an

---

**4.** In *Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970), the Supreme Court explained why increased cost does not justify denial of a prior hearing:
> The requirement of a prior hearing doubtless involves some greater expense, and the benefits paid to ineligible recipients probably cannot be recouped, since these recipients are likely to be judgment-proof.... [However,] the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs

the State's competing concern to prevent any increase in its fiscal and administrative burdens. As the District Court correctly concluded, "[t]he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal." [*Kelly v. Wyman*, 294 F.Supp. 893, 904–05 (S.D.N.Y.1968) ].

appropriate class should the Court find it to be warranted." Defendant does oppose, however, plaintiffs' proposed class definition. Defendant contends that plaintiffs' definition is overinclusive, encompassing persons whose claims are outside the scope of this case. Defendant proposes an alternative definition for the Court's consideration, should it be inclined to certify a class, as follows:

> Those current residents of Adult Congregate Living Facilities, who while Medicaid eligible and while residents of Adult Congregate Living Facilities, received Home Health Care Benefits from either Conval–Care, Inc. or Underhill Personnel Services prior to May 20, 1991.

In addition to opposing plaintiffs' class definition, and despite his statement that he does not oppose the certification of an appropriate class, defendant asserts at the end of his response that no need exists for this action to be conducted as a class action. Defendant contends that all members of the class—as defendant has defined it—are known by name and address and that "an order can be entered which can easily encompass all those named ... without the necessity of proceeding as a class action." Below, the Court addresses first the issue concerning the appropriate class definition and then the issue concerning the necessity for certifying a class at all.

■ The Court agrees with defendant that plaintiffs' proposed class definition is overbroad. This case is about the procedural due process rights of a group of individuals who had benefits terminated by two specific acts of HRS—the terminations of Underhill and Conval–Care from participation in the Florida Medicaid program—and whose rights turn on the particular circumstances surrounding those acts. Plaintiffs assert that the basis for the decisions to terminate the providers was a finding by HRS that the individual recipients being served by the providers were not eligible for home health care benefits. This assertion derives from the termination letters which HRS sent to the two providers. In those letters, HRS states that the providers were being terminated because

the recipients were ineligible for benefits, both because the recipients did not fall into a defined category of those eligible and because the benefits were not medically necessary.

To ensure that there are questions of law or fact common to the class and that the named plaintiffs' claims are typical of the claims of the class, the Court must limit the class to those recipients whose benefits were terminated when HRS terminated the two providers. The Court cannot certify a class as broad as that defined by plaintiffs because such a class would encompass recipients who lost or will lose benefits for a reason other than a determination that the recipients are ineligible. For example, if HRS determined that a provider was billing the state for providing services to individuals who had died or was billing the state for services that in fact had not been provided, HRS may take action to terminate that provider for fraud. The question whether, under those hypothetical circumstances, the state would be required to provide the individual recipients with notice and hearing presents factual and legal issues distinct from those presently before the Court. Accordingly, the Court defines the potential class as follows:

> All persons whose home health care benefits under the Florida Medicaid program were terminated when Underhill Personnel Services and Conval–Care, Inc., were terminated from participation in the program on May 20, 1991, and who were not given advance notice and the opportunity for a hearing before their benefits were terminated.

This class consists of approximately 178 members. *See* Exhibit 1 attached to plaintiffs' amended complaint.

■ The Court next addresses the issue concerning the necessity for certifying a class at all. As stated above, defendant argues that because all members of the class are known by name and that "an order can be entered which can easily encompass all those named," no need exists for this action to be maintained as a class action. This argument is without merit because the Court cannot enter such an

order without making the named potential class members parties to this case, either as named plaintiffs or as members of a plaintiff class. Merely ordering relief for the named plaintiffs would not provide relief for the other members of the class.

Moreover, while the size of the potential class is not extremely large, it would be impracticable to join all members of the class as named plaintiffs. Members of the plaintiff class are mentally ill or mentally retarded and have very limited financial resources. Considering plaintiffs' mental handicaps and economic resources, to require each of them to bring separate actions to enforce identical rights would be unnecessarily burdensome, that is, impracticable. *See Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D.Fla.1986). The class action device is particularly suitable in this case in which the Court is presented with a discrete legal issue, identical for all class members.

■ In accordance with the above, the Court finds that all requirements of Rule 23 have been met for this action to be certified and maintained as a class action. First, as explained above, the class is so numerous that joinder of all members is impracticable. Second, questions of law or fact common to the class exist. Each plaintiff's individual claim presents the identical question: whether the termination of home health care benefits that resulted from the termination of the home health care providers triggered the due process protections of the Medicaid Act, its implementing regulations and the Fourteenth Amendment. Third, the claims of the named plaintiffs are not only typical but, as just stated, identical to the claims of the class. Fourth, the named plaintiffs, represented by able and experienced public interest counsel, will fairly and adequately protect the interests of the class. The named plaintiffs have no relevant interests which are antagonistic to the interests of the class. Finally, defendant has refused to act on grounds generally applicable to the class, that is, defendant has refused to grant the requested reinstatement, notice and hearing on the grounds that such actions are not required under the law, given the facts surrounding the termination of the two home health care providers. Thus, final declaratory and injunctive relief is appropriate with respect to the class as a whole.

### Motions for Summary Judgment

■ As stated above, plaintiffs base their claim on a simple theory: that the termination by HRS of the two home health care providers was a termination of plaintiffs' Medicaid benefits which triggered the procedural protections afforded by the Constitution and by the applicable statutes and regulations. Defendant's primary response is as straightforward as plaintiffs' claim: the providers were terminated, not plaintiffs' benefits, and therefore the procedural protections are inapplicable.

The statutory and regulatory bases of plaintiffs' claim are 42 U.S.C. § 1396a(a)(3) (1988) and Subpart E of 42 C.F.R. Pt. 431 (1990). 42 U.S.C. § 1396a(a)(3), which codifies Section 1902(a)(3) of the Medicaid Act, provides that "[a] State plan for medical assistance must ... provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." Subpart E of 42 C.F.R. Pt. 431 contains the regulations which implement this statutory hearing requirement. 42 C.F.R. § 431.200. These regulations define the process that is due Medicaid recipients pursuant to the Supreme Court's holding in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). 42 C.F.R. § 431.205(d) (state's hearing procedures "must meet the due process standards set forth in *Goldberg v. Kelly* ... and any additional standards specified in this subpart").

When a state decides to take an "action" which will affect a recipient's Medicaid benefits, "[t]he State or local agency must mail a notice at least 10 days before the date of action," except under limited circumstances not applicable here. 42 C.F.R. § 431.211. "*Action* means a termination, suspension, or reduction of Medicaid eligibility or cover-

ed services." *Id.* § 431.201. The notice must contain a statement of the intended action and the reasons and legal basis for it. *Id.* § 431.210(a), (b) & (c). The notice also must explain the right to a hearing and the circumstances under which Medicaid is continued if a hearing is requested. *Id.* § 431.210(d)-(e).

"The agency must grant an opportunity for a hearing to ... [a]ny recipient who requests it because he believes the agency has taken an action erroneously." *Id.* § 431.220(a)(2). If "the recipient requests a hearing before the date of action, the agency may not terminate or reduce services until a decision is rendered after the hearing unless (1) It is determined at the hearing that the sole issue is one of Federal or State law or policy; and (2) The agency promptly informs the recipient in writing that services are to be terminated or reduced pending the hearing decision." *Id.* § 431.230(a).

Defendant does not dispute that these provisions are valid generally and applicable to the termination of home health care benefits under the Florida Medicaid program specifically. Defendant does dispute, however, that a termination took place in this case such that plaintiffs were entitled to notice and hearing under these provisions, relying primarily on *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980).

In *O'Bannon,* the Supreme Court held that residents of a nursing home had no constitutional right to participate in revocation proceedings when state and federal agencies revoked the home's authority to provide the residents with nursing care at government expense. *Id.* at 775, 100 S.Ct. at 2470. In 1976, the nursing home had been certified by the federal Department of Health, Education and Welfare ("HEW") as a "skilled nursing facility." As such, it became eligible to receive payments from HEW and its state agency counterpart for providing nursing care services to aged, disabled and poor persons who were eligible for Medicare and Medicaid benefits. *Id.* In 1977, HEW notified the operator of the nursing home that it "no longer met

the statutory and regulatory standards for skilled nursing facilities and that, consequently, its Medicare provider agreement would not be renewed." *Id.* at 776, 100 S.Ct. at 2470. This decertification decision was based upon a survey conducted by the state agency which revealed that the nursing home did not meet certain health and safety requirements of the Medicare Program. *Id.* at 776 n. 3, 100 S.Ct. at 2470 n. 3.

The nursing home residents alleged that they "were entitled to an evidentiary hearing on the merits of the decertification decision before the Medicaid payments were discontinued." *Id.* at 777, 100 S.Ct. at 2471. The Third Circuit, sitting en banc, agreed, concluding "that the patients had a constitutionally protected property interest in continued residence at [the nursing home] that gave them a right to a pretermination hearing." *Id.* at 779, 100 S.Ct. at 2472. The Supreme Court reversed, finding that the Medicaid Act did not give the residents a property right to remain in the home of their choice and finding also that the potential that the residents would suffer trauma upon being transferred to a different home did not create life or liberty interests. *Id.* at 784–87, 100 S.Ct. at 2474–76. Thus, the residents, as a matter of constitutional law, were not entitled to a hearing before the government could decertify the home.

Defendant argues that *O'Bannon* is dispositive of plaintiffs' claims in this case, asserting that the decertification decision in *O'Bannon* is analogous to the decision to terminate the two home health care providers in the present case. On the surface, this argument appears to have merit. In both cases, the government disqualified a third party from providing government-subsidized medical care to the plaintiffs and the plaintiffs sued, contending that the disqualification decision triggered due process protections. However, a crucial distinction emerges when the underlying basis for the disqualification in each case is examined.

The basis of the disqualification in *O'Bannon* was that the nursing home did

not meet certain health and safety requirements of the federal Medicare Program. The nursing home's failure was inherent in its operation and was not engendered by the residents' ineligibility to receive the services of the home. The residents at all times remained eligible for the services, albeit from a different nursing home. *Id.* at 787, 100 S.Ct. at 2476. In contrast, the basis of the providers' disqualification in the present case is that plaintiffs were found to be ineligible for the services. If plaintiffs are ineligible for the services, they cannot receive them from a different provider. Thus, the providers' failure was not inherent in their operations, but derived from the "failure" of plaintiffs to be eligible for the services.

That the basis of the providers' disqualification was the ineligibility of plaintiffs to receive the home health care benefits in question is manifested by the termination letters which HRS sent to the two providers. The letter to Underhill stated that "[t]he recipients in this review do not fall into either required category" of those eligible for home health care benefits. That is, for those recipients,[5] the home health care was neither "an extension of medical care into the home during a convalescent period [n]or an alternative to permanent institutionalization." *See* Exhibit 2a attached to plaintiffs' amended complaint, at 2. In addition, HRS determined that "the use of skilled nurses to administer medication to the recipients comprehended in the review is not medically necessary." *Id.*

In like manner, the letter to Conval–Care stated that "the recipients in this review do not fall into either required category" of those eligible for home health care bene-

fits. For those recipients,[6] home health care was neither "an extension of medical care into the home during a convalescent period [n]or an alternative to permanent institutionalization." *See* Exhibit 2b attached to plaintiffs' amended complaint, at 2. In addition, the provided services "were not medically necessary." *Id.*

These statements demonstrate that the providers were disqualified because HRS found that the recipients, members of the plaintiff class, were not eligible for the services being rendered. The recipients were not eligible either because HRS determined that they did not fit into a category of those eligible or because the services were not medically necessary for those recipients. The practical effect of this determination is that it disqualifies plaintiffs from receiving the home health care benefits from any provider. Such a disqualification is a "termination ... or reduction of Medicaid eligibility or covered services" under 42 C.F.R. § 431.201 for which advance notice and the opportunity for a pretermination hearing must be given. HRS cannot circumvent the required due process protections by terminating the provider for serving ineligible recipients rather than directly notifying the recipients themselves that they are ineligible. Allowing such circumvention would render the protections meaningless.

■ Defendant next argues that plaintiffs have not shown that they had a protectible property interest in the benefits they were receiving. In defendant's view, no such interest exists because the benefits were "illegal" for one of three reasons: (1) plaintiffs were ineligible to receive the ben-

---

**5.** In Underhill's case, HRS reviewed a random sample of 24 recipients for whom Underhill received payment for home health care services during the period from January 1, 1990, to January 31, 1991. *See* Exhibit 2a attached to plaintiffs' amended complaint, at 1. Because it found that all 24 recipients in the sample were ineligible to receive the services, HRS extrapolated that 100% of all claims submitted by Underhill during the review period were paid in error. *See* Exhibit 2a, at 2. Based on this extrapolation, HRS terminated Underhill from providing services to any recipient, thereby terminating the home health care benefits of all

recipients who had been receiving care through Underhill.

**6.** In Conval–Care's case, HRS reviewed "claims that [Conval–Care] submitted for the period December 1, 1989, through November 18, 1990. The services reviewed were rendered primarily to residents of three Adult Congregate Living Facilities (ACLF) in Duval and Nassau counties. Services were also reviewed for three recipients residing in private residences in the Palatka area." *See* Exhibit 2b attached to plaintiffs' amended complaint, at 1–2.

efits, (2) the benefits were not medically necessary and thus not covered under the home health care program, or (3) the provided services were duplicative of services already provided by the ACLF's. Because the benefits were illegal, defendant concludes, plaintiffs had no "legitimate claim of entitlement" to them and accordingly were not entitled to due process before the benefits were terminated. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (a person must have a "legitimate claim of entitlement" to a benefit to have a property interest in that benefit).

The foundation of this argument is the assertion that plaintiffs must prove that they are eligible for benefits before HRS must grant them the right to a hearing in which to prove that they are eligible for benefits. This assertion is plainly illogical and contrary to due process precedent. Defendant's argument ignores the word "claim" in the *Roth* standard. Plaintiffs in the present case do not have to show that they are entitled to the home health care benefits in question, only that they have a legitimate *claim* of entitlement to such benefits. Plaintiffs have made that showing.

In *Roth*, the Supreme Court explained the sources from which such legitimate claims, and thus property interests, may be derived:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly*, [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ], had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.

*Roth* 408 U.S. at 577, 92 S.Ct. at 2709. Like the welfare recipients in *Goldberg*, the Medicaid recipients in the present case ground their claim of entitlement to home health care benefits in state law which defines eligibility for them. While they may not yet have shown that they are, in fact, within the terms of eligibility, they need not do so to prevail on their claim that they have a right to a hearing in which they might attempt to do so.

■ Plaintiffs ground their claim of entitlement to home health care benefits in Rule 10C–7.044 of the Florida Administrative Code. This rule sets forth the eligibility requirements for home health care. Subsection (2) of the rule states "[a]ll Title XIX (Medicaid) recipients are eligible for Home Health Care." Subsection (5) provides, in pertinent part, as follows:

> Requirements for reimbursement for Home Health Care Services.
>
> (a) Nursing or aide services are reimbursable under Medicaid when such services are:
>
> 1. Prescribed by the attending physician;
>
> 2. Provided in accordance with an established plan of care;
>
> 3. Determined to be medically necessary; and
>
> 4. Provided only to a recipient who has been certified by the physician as homebound.

Subsection (1)(k) provides that "[h]omebound means that an individual is generally confined to the place of residence, excluding hospitals, skilled or intermediate care facilities or intermediate care facilities for the mentally retarded."

HRS readily admits that plaintiffs are Medicaid-eligible and plaintiffs have asserted that they meet the other requirements for home health care. In addition, HRS does not dispute that it reimbursed plaintiffs' home health care providers on the basis of physician certifications that plaintiffs met all of these requirements. While defendant does dispute the physician findings that the services are medically necessary and that plaintiffs meet the other re-

quirements for eligibility, such a dispute concerns the underlying merits of the claim and does not make the claim any less legitimate. Plaintiffs have a legitimate claim of entitlement to these benefits and thus have a right to a hearing so that they might vindicate their claim.[7]

As a final matter, the Court notes that *O'Bannon, Roth* and *Goldberg*, as well as other cases cited by the parties and considered by the Court, concern only the parameters of the right to due process under the Constitution. In the present case, however, plaintiffs ground their claim both in the Constitution and in the Medicaid Act and its implementing regulations. The regulations set forth specific procedural rights that a state must grant to Medicaid recipients whenever they face a "termination, suspension, or reduction of Medicaid eligibility or covered services." *See* 42 C.F.R. § 431.201. Plaintiffs claim, and the Court has found, that the action by HRS to terminate the two providers was, in effect, a termination of plaintiffs' Medicaid benefits under the home health care program. This termination mandates that they receive notice and hearing under the applicable regulations. Ordinarily, this finding would end the inquiry and the Court would order relief pursuant to those regulations, without addressing the constitutional aspect of the claim. *See County Court of Ulster County v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979) (district courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration"); *Hagans*

*v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) (constitutional claim should not be reached if statutory claim is dispositive).

The Court, however, determined to address plaintiffs' rights under both the Constitution and the applicable statutes and regulations for two reasons. First, as noted *supra* p. 1520, the regulatory notice and hearing provisions specifically incorporate the constitutional due process standard enunciated in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See* 42 C.F.R. § 431.205(d). Thus, constitutional analysis is relevant to the statutory and regulatory claim. Second, the parties have not maintained a rigid analytical distinction between the constitutional claim and the statutory and regulatory claim, most likely because the regulations incorporate *Goldberg.* Accordingly, the Court has addressed both grounds for relief, finding that defendant has violated plaintiffs' right to notice and hearing under the statutory and regulatory provisions and that defendant has violated plaintiffs' right to due process under the Constitution.

### Conclusion

The undisputed material facts demonstrate that plaintiffs and the class they represent are entitled to judgment as a matter of law. Plaintiffs were receiving home health care benefits paid for by the Florida Medicaid program. HRS terminated these benefits when it found that plaintiffs were not eligible for the services they were receiving and, as a result, terminated

---

7. While the Court need not determine here that plaintiffs are, in fact, eligible for home health care benefits, the outcome of an administrative hearing held as a result of earlier proceedings in this case is further evidence that plaintiffs have a legitimate claim of entitlement to these benefits. As stated above, at page 3, in an order filed on July 29, 1991, the Court granted a preliminary injunction as to the three original named plaintiffs in this action. In compliance with this order, HRS reinstated these plaintiffs' home health care benefits and subsequently gave notice that the benefits would be terminated. According to plaintiffs, all three requested and received a pretermination hearing. *See* Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 2 n. 1. Two of these

plaintiffs were found to be ineligible for benefits while one, Mary Ropero, was found to be eligible. *Id.*

At the hearing conducted on January 30, 1992, the Court took judicial notice of the outcome of Ropero's administrative hearing and received from plaintiffs' counsel a copy of the Final Order of the hearings officer. The hearings officer found that Ropero was homebound within the definition of the home health care regulations, that the services she was receiving were medically necessary and that she was otherwise eligible for the services. Accordingly, the hearings officer reversed the action which terminated Ropero's benefits. By separate order entered this day, the Court has made the hearings officer's order a part of the record in this case.

the providers of the services from participation in the Medicaid program. Plaintiffs were entitled under the Medicaid Act, its implementing regulations and the Due Process Clause of the Fourteenth Amendment to advance notice and the opportunity for a hearing before their benefits were terminated. HRS did not provide the required notice or opportunity for a hearing. HRS thus violated plaintiffs' statutory, regulatory and constitutional due process rights.

Accordingly, it is

ORDERED AND ADJUDGED:

1. That Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 60) is DENIED;

2. That Plaintiffs' Amended Motion for Class Certification (Doc. 43) is GRANTED;

3. That this action is certified and shall be maintained as a class action with the plaintiff class defined as follows:

All persons whose home health care benefits under the Florida Medicaid program were terminated when Underhill Personnel Services and Conval-Care, Inc., were terminated from participation in the program on May 20, 1991, and who were not given advance notice and the opportunity for a hearing before their benefits were terminated.

4. That Plaintiffs' Motion for Summary Judgment (Doc. 51) is GRANTED;

5. That Defendant's Motion for Summary Judgment (Doc. 62) is DENIED;

6. That final judgment is entered in favor of the plaintiff class and against defendant for the declaratory and injunctive relief specified below;

7. That defendant's failure to provide members of the plaintiff class with advance notice and the opportunity for a hearing before terminating their home health care benefits under the Florida Medicaid program is declared a violation of the Fourteenth Amendment, 42 U.S.C. § 1396a(a)(3) (1988) and 42 C.F.R. §§ 431.200–.250 (1990);

8. That defendant is enjoined to reinstate, within 21 days from the date of this Order, home health care benefits under the Florida Medicaid program to all members of the plaintiff class until they have received advance notice and the opportunity for a hearing before their benefits are terminated, pursuant to the Fourteenth Amendment, 42 U.S.C. § 1396a(a)(3) (1988) and 42 C.F.R. §§ 431.200–.250 (1990); and

9. That Plaintiffs' Amended Motion for Order and Preliminary Injunction (Doc. 45) is DENIED AS MOOT.

DONE AND ORDERED.